This appellant was found guilty by a jury and sentenced by the court to imprisonment for ten years on a trial on an indictment that charged that she "did, with intent to cause serious physical injury to another person, cause serious physical injury to Joann Davis by means of a deadly weapon, or a dangerous instrument, to-wit: an automobile, in violation of Title 13A-6-20 of the Code of Alabama, 1975. . . ."
No issue is presented on appeal as to the sufficiency of the evidence to support the verdict. We find it unnecessary to recite any of the details of the evidence other than those contained in the next paragraph.
After midnight on the night of May 1-2, 1982, the alleged victim was struck and seriously injured on a public street in Florala by an automobile owned by the appellant. The victim is the sister of appellant's husband, who had been separated from appellant about a year and a half. The husband, accompanied by the alleged victim and another female, were at a club, across the Alabama-Florida line, where there was much drinking and revelry, in which they participated. Appellant was also at the club that night, but was not in company with the other three mentioned. The other three had gone to the club in the automobile of appellant's husband, who after midnight returned with his sister and the other female in the automobile with him, first to the other female's home and then to his sister's home. As the sister was leaving the automobile and while she was still in the street, the mentioned automobile drove by and collided with her, knocking her down in the street, and did not stop at the scene.
The crucial issue of fact was whether defendant was driving the automobile when the alleged victim was struck by it. There was positive evidence that defendant was driving at the time; the defendant testified emphatically that she was not in the automobile at the time, and that she had allowed another female to borrow it.
 I.
During the testimony of Mr. Alcus Radney, the father of the defendant, who had testified that he was with the defendant at the club on the night of the alleged crime, the following occurred during the direct examination of the witness:
 "Q. Did anyone else join you and Myra or come up at that time?
"A. There was a girl by the name of Mildred come up.
"Q. Now can you tell us where she came from?
"A. She was there in the State Line.
"Q. In the State Line?
"A. She come outside.
"Q. Did she say anything to you or did you know her?
"A. Not personally, no sir.
"Q. Did she say anything to Myra?
"A. Yes, sir.
"Q. Can you tell us what she said to Myra?
 "MR. LOGGINS [District Attorney]: Your Honor, we object.
"THE COURT: I sustain the objection to that.
"Q. Can you tell us anything that Myra said to her? *Page 595 
"MR. LOGGINS: We object to that also, Your Honor.
"THE COURT: I sustain the objection to that.
"A. Am I supposed to answer that question?
 "Q. No, the Judge has ruled that you can't answer it. Can you tell us if Mildred drove off from that place?
"A. Yes, sir.
 "Q. All right. This vehicle that your daughter had, did she drive off in that vehicle?
"MR. LOGGINS: We object, Your Honor?
"THE COURT: Overruled.
 "A. Yes sir, Mildred drove off in Myra's car. She wanted to borrow it.
 "MR. LOGGINS: We object to that statement, that she wanted to borrow it, and move to exclude it.
"THE COURT: I overrule, go ahead.
"Q. At that time where did Myra live in Florala?
 "A. She lived over around at them low rental apartments there in Florala. I don't know the address.
 "Q. Now did you and Myra leave that place together or did you leave separately, you and Myra?
"A. At the State Line?
"Q. Yes.
"A. We left together.
"Q. Where did you go?
"A. We [sic] to her house.
 "Q. All right, when you got to her house did you see this Mildred again?
 "A. She was leaving. Her and some man was in that car and they was leaving and she just rolled the window down —
 "MR. LOGGINS: Wait, we object, if you are going to say something that she said.
 "THE COURT: He said that he saw her, she was at the house. Just continue with your examination.
"Q. Did Mildred say anything to you?
 "MR. LOGGINS: We object, Your Honor. What Mildred said, that is hearsay.
"THE COURT: I sustain the objection.
"Q. Did Mildred say anything to Myra?
"MR. LOGGINS: We object to that.
"THE COURT: I sustain.
 "Q. Did Mildred get out of the vehicle that she was in?
"A. No, sir.
"Q. Was she driving that vehicle?
"A. No, sir.
"Q. Could you tell who was driving?
"A. No, sir.
 "Q. Did you see your daughter's car there at the time?
"A. Yes, sir.
"Q. Where was it?
"A. It was sitting in front of the apartment.
 "Q. All right. What did Myra do when you got to her apartment?
 "A. She went in and went to bed, I reckon, she went inside."
Appellant urges that the trial court was in error in sustaining the State's objection to the inquiry of the witness as to what "Mildred" had said to the defendant, and insists that what she said would have disclosed a request by "Mildred" to borrow the defendant's automobile. Our view is that the testimony of the witness otherwise shows clearly that he in effect testified clearly that "Mildred" did ask or request the defendant to let her borrow the automobile, and that defendant was not prejudiced by the rulings of the court as shown above.
 II.
Appellant's second issue pertains to the court's ruling relative to objections or motions by defendant to questions propounded to the defendant, and other witnesses for her, on cross-examination as to whether the witness knew "what perjury is."
The transcript shows the trial court did not rule adversely to defendant as to any objection or motion made by defendant as to such inquiry, except defendant's motion for a mistrial, which the trial court overruled, which ruling constitutes the basis for the fourth issue presented by appellant, which we will hereafter consider in the order presented in appellant's brief. *Page 596 
 III.
As a third contention for a reversal, it is argued in appellant's brief:
 "The trial court prevented all of the Defendant's witnesses from identifying the person who borrowed the Defendant's car. The Defendant submits that she should have been allowed to introduce all competent evidence which would tend to exclude her as the person who assaulted the Defendant."
One incident on the trial is referred to by appellant in support of the contention just quoted. It occurred during the redirect examination of one of defendant's witnesses, who had worked at the Dinner Bell in Florala. The transcript shows the following on the particular point:
 "Q. Do you remember seeing a girl whose first name was Mildred come in the Dinner Bell?
 "MR. LOGGINS: We object to that form of the question, Your Honor.
"THE COURT: I sustain the objection to that."
We fail to see, as does appellant, anything wrong with the form of the question, unless perhaps it was somewhat leading or suggestive. However, we also fail to see any harm to defendant by the court's sustension of the State's objection to the question. Appellant argues that "the testimony supported the previous testimony of the witness, Alcus Radney. (R-94)." We have already discussed and quoted from the testimony of Alcus Radney at page 94 of the record. No categorical answer to the question to which the objection was sustained would have tended to support the material part of the testimony of the witness, Alcus Radney, to the effect that defendant was not in her own automobile at the time the alleged victim was struck by the automobile. There was no prejudicial error committed by the sustension of State's objection to the question asked the witness Shirley Henson as to whether she remembered seeing a girl whose first name was Mildred come in the Dinner Bell.
 IV.
We add to what we have stated under II above the following as to the last reference in the transcript as to what was said by any witness, any attorney, or the trial judge, as to whether any witness "knew what perjury is":
 "MR. PRESTWOOD [Defendant's Attorney]: We are going to move for a mistrial. Because he asked that of Mr. Alcus Radney who was not on trial and now he is trying to justify it by saying that his witnesses are not on trial.
 "THE COURT: Ladies and gentlemen, the objection was sustained to that question asking this witness if she knew what perjury was and it was sustained. Could all of you put that out of your mind? . . . If there is any one of you that couldn't put that question out of your mind, hold up your hand? . . . Motion overruled."
 V.
Under the above caption appellant's brief contains the following:
 "The trial court erred in allowing the prosecutor to comment in his closing remarks that `he' had never heard of the person who had borrowed the Defendant's car. The Defendant submits that what the prosecutor had heard or had not heard was totally irrelevant. This was simply another improper prejudicial stab at the Defendant to which the trial court closed its eyes."
The material at which appellant's contention is directed is found during the following portion of the closing argument of the District Attorney:
 "MR. LOGGINS: Now this, this letter, I don't know what this is, I don't know who wrote it. I never heard of this Mildred.
 "MR. PRESTWOOD: We object to the District Attorney testifying, in effect, he doesn't know or he doesn't know that.
"THE COURT: I think that is a legitimate response."
The reference to a letter was a reference to defendant's Exhibit 1, a letter bearing the *Page 597 
date of February 15, 1983, with the envelope postmarked Panama City, Fla., 18 Feb. 1983, addressed to Myra Pickron, Rt. 3, Samson, Alabama 36477, as follows:
"Dear Myra,
 "I heard that your trial is coming up. I am sorry that I can't come forth and testify for you. But I have children and could loose [sic] custody of them. Myra, I hope one day you can understand and forgive me of what I did. I cannot imagine what you are going through. I hope and pray that you are freed. Please forgive me, Mildred."
Defendant's Exhibit 1 had been received in evidence by the court over the strong protest of the State. Defendant's counsel was entitled to use it as strong evidence for the defendant, and doubtless he did, but the transcript does not show any of the argument of either counsel for the State or counsel for the defendant except that portion of the closing argument of the District Attorney quoted above. Therefore, we cannot conclude that the trial court was incorrect in stating, "I think that is a legitimate response." The transcript shows that the District Attorney continued to comment upon the exhibit and to challenge its reliability as a purported letter from the "Mildred" whom defendant said she had allowed to borrow her automobile. In the interest of justice, the question of the truth as to who wrote the letter should have been pursued further, but we refrain from commenting further on that question, by reason of our concern that we would thereby do someone an injustice.
 VI. VII.
In a portion of appellant's brief captioned as above, appellant argues in support of affirmative answers to the following questions in appellant's brief:
 "Did the Trial Court err in holding that it was without authority to amend the Defendant's sentence where a Motion To Amend was filed within thirty days?
 "Did the Trial Court err in denying the Defendant's Motion For a New Trial?"
Defendant's Motion for a New Trial contained the following three grounds only:
"1. The Verdict was contrary to the evidence.
"2. The Verdict was contrary to the law.
 "3. The court erred in overruling defense counsel's timely objections to the numerous references by the prosecutor to the crime of perjury."
It is to be noted that there is no ground alleging that the verdict was contrary to the weight or preponderance of the evidence, or the like. In our opinion, there was strong evidence, pro and con, as to defendant's guilt, and a jury issue was presented as to her guilt. It is not within our province to substitute our judgment for that of the court and jury. As to the third ground of the motion, we have passed on the question presented thereby adversely to appellant in a previous part of this opinion. The trial court was not in error in overruling defendant's motion for a new trial.
The sentence imposed upon the defendant was imprisonment for a "term of ten (10) years and one (1) day." An assault in the first degree is a Class B felony, Alabama Criminal Code §13A-6-20 (b), which by § 13A-5-6 (a)(2) is punishable by imprisonment for "not more than 20 years or less than 2 years." Defendant's motion to amend the sentence contains the following grounds:
"1. The Defendant has no prior criminal record.
 "2. The Defendant has minor children which require her care and support.
 "3. The court sentence bars the Defendant from consideration for probation and incentive good time.
 "4. The Defendant is currently employed and is a productive member of her community."
The judgment of conviction and sentence was rendered on March 22, 1983. The motion to amend the sentence, as well as the motion for a new trial, was filed within thirty days from the rendition of the judgment. On May 10, 1983, the trial judge *Page 598 
entered an order "that a hearing on the Defendant's Motions be held on the 13 day of May, 1983, at 9:00 o'clock A.M." The transcript shows the following at the commencement of the hearing of the motions:
 "THE COURT: There are two motions; a Motion to Amend the Sentence and a Motion for New Trial. The Motion to Amend the Sentence was not presented to the Court and continued within the thirty days. And as I understand the law I have no authority to amend the sentence after the passage of thirty days. So, any evidence that you wish to submit will be on the Motion for New Trial and naturally will be limited to testimony pertinent to any ground in the Motion for New Trial."
On May 17, 1983, the trial judge made and entered an order containing the following paragraph:
 "And it appearing to the Court that the Motion to Amend the Sentence imposed upon the Defendant on March 22, 1983, was filed within thirty (30) days of the time that the Court imposed sentence on the Defendant but was not brought to the attention of the Court or properly continued by the Court, the Court is of the opinion that it has lost jurisdiction to amend the sentence imposed March 22, 1983, and it is therefore, ORDERED, ADJUDGED, and DECREED that the Motion to Amend the Sentence imposed upon the Defendant is hereby denied."
In our opinion, the position taken by the trial judge to the effect that the Court had no jurisdiction to amend the sentence imposed because of the fact that the motion had not been brought to the attention of the Court is in conflict with Rule 13 (c) of the Temporary Rules of Criminal Procedure, effective March 1, 1982, as follows:
 "Presentation to Judge not required. In order to perfect the filing of a motion in arrest of judgment or a motion for new trial, it is not necessary for the motion to be presented to the judge; nor is it required, in order to perfect its filing, that the motion be set for a date certain."
Although a motion to amend the sentence does not come within the precise language of Rule 13 (c), we think it is within the coverage thereof in light of the clear intent of Rule 13 captioned "Post-trial motions," when considered with the long judicial and legislative efforts that have been made with considerable success to prevent injustice at times by reason of previously existing law, commencing in 1915 and contained in all Alabama Codes thereafter to and through Code of Alabama, Recompiled 1958, Tit. 13, § 119, which provided that after the lapse of thirty days from the rendition of a judgment or decree by a circuit court the court would "lose all power over it, as completely as if the end of the term had been on that day, unless a motion to set aside the judgment or decree, or grant a new trial has been filed and called to the attention of the court, and an order entered continuing it for hearing to a future day." The trial court was not in error in holding that it was without jurisdiction to grant defendant's motion to amend the judgment.
This cause should be remanded to the trial court with instructions to conduct a hearing on defendant's motion for change or modification of the sentence to make a determination thereof, and in due course for the trial court to make a return to this order of remandment, with a copy thereof to each of the parties. Either party aggrieved thereby will have twenty-eight days within which to file a brief, and the opposing party will have fourteen days thereafter within which to file a reply brief.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
REMANDED WITH INSTRUCTIONS.
All the Judges concur. *Page 599