920 So.2d 1122 (2005)
Kenneth Wayne DIXON
v.
STATE of Alabama.
CR-03-1742.
Court of Criminal Appeals of Alabama.
April 29, 2005.
Rehearing Denied June 24, 2005.
Certiorari Denied August 12, 2005.
*1124 Stephanie W. Kemmer, Centreville, for appellant.
Troy King, atty. gen., and Elizabeth Ray Butler, asst. atty. gen., for appellee.
Alabama Supreme Court 1041496.
PER CURIAM.

I. Introduction
On March 4, 1991, Kenneth Wayne Dixon pleaded guilty to first-degree assault. On July 31, 1991, the trial court sentenced him to 10 years in prison; the trial court refused probation. The trial court also ordered him to pay $10,000 in restitution and $5,000 to the Alabama Crime Victims Compensation Fund. On August 28, 1991, Dixon filed a "Motion to Set Aside Court's Sentence." (C. 20-21.) After the State responded, the trial court conducted a preliminary hearing on the motion on September 25, 1991. The trial court continued the motion until November 1, 1991, noting that "[t]he Court does specifically retain jurisdiction of this case. Con't until Nov 1st." (C. 2.) Various other continuations of the motion were granted until June 3, 1992. On that date, the trial court issued an order suspending Dixon's 10-year sentence, releasing him from prison, and placing him on probation. The trial court also increased the total amount of restitution to be paid to $75,000[1] and increased the amount to be paid to the Crime Victims Compensation Fund to $10,000.[2]
*1125 On September 28, 1998, following a revocation hearing, the trial court revoked Dixon's probation "based on his failure to pay court ordered money as shown in the court file." (C. 194.)[3] After Dixon had completed his prison sentence,[4] the State petitioned the Court on July 28, 2003, to hold him in contempt because he owed a balance of $38,833.59 on his court-ordered restitution. (C. 213.) On February 19, 2004, Dixon moved to dismiss the petition. The trial court denied the motion to dismiss and ordered that Dixon "provide a plan for payment of the amounts due" within 21 days of the order or be held in contempt and taken into custody. (C. 247.) On June 10, 2004, Dixon filed a "Motion for New Trial," in which he took issue with the trial court's order; the trial court denied his motion on June 16, 2004. On that same date, the State moved the trial court to hold Dixon in contempt. The trial court did so, ordering that Dixon "be immediately incarcerated for such contempt and held in the Bibb County Jail pending payment of a lump sum of $10,000." (C. 251.) This appeal followed.[5] We reverse and remand.
On appeal, Dixon argues that the trial court erred by holding him in contempt for failing to pay the ordered restitution and victims compensation fund amount because he has fulfilled the payment requirements of his original sentencing order, and the subsequent order, which placed him on probation in exchange for increasing the owed restitution and fee, was void under Rule 24.4, Ala. R.Crim. P. Dixon put forth this argument to the trial court in his motion to dismiss the contempt charges and in his motion for a new trial.

II. The Contempt Order
Although, as we explain later, we agree with Dixon's argument that the subsequent order of the trial court increasing the restitution and the amount he was required to pay to the Crime Victims Compensation Fund was void, we note that there is a greater issue before us. Initially, we reverse the order of the trial court holding Dixon in contempt based on the fact that the trial court did not have subject matter jurisdiction over the contempt action against Dixon.
It is well-settled that "[i]n no case shall an indigent defendant be incarcerated for inability to pay a fine or court costs or restitution." Rule 26.11(i)(2), Ala. R.Crim. P. See also P.W. v. State, 625 So.2d 1207, 1210 (Ala.Crim.App.1993) ("`[T]he imprisonment of an indigent offender for failure to pay his fine is generally recognized as constitutionally impermissible, Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970); Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971).' Wheatt v. State, 410 So.2d 479, 481 (Ala.Cr.App.1982)."); Zeigler v. Butler, 410 So.2d 93, 94 (Ala.Civ.App.1982) ("The law is settled that imprisonment for contempt should not be imposed where the failure to pay [an arrearage in child support] is due to an inability to comply with the order. *1126 Muery v. Muery, 46 Ala.App. 617, 247 So.2d 123, cert. denied, 287 Ala. 737, 247 So.2d 128 (1971).").
In Ex parte Watson, 757 So.2d 1107, 1112 (Ala.2000), the Alabama Supreme Court noted:
"A restitution order is a money judgment, just as an order to pay a fine and costs is a money judgment. A restitution order may be secured and collected with all of the powers available under the law for securing and collecting civil judgments, see Rules 64 and 69, Ala. R. Civ. P., albeit without some of the constraints, such as the debtor's exemptions from civil judgments. See § 15-18-78, Ala.Code 1975; Moore v. State, 706 So.2d 265 (Ala.Crim.App.1996); and Rice v. State, 491 So.2d 1049 (Ala.Crim. App.1986)."
(Emphasis added.)
Nowhere in our caselaw, statutes, or rules do we allow the imprisonment of a civil debtor because he or she is unable to pay the debt. Nowhere in our caselaw, statutes, or rules will a case of constructive contempt lie for the inability to pay a debt owed to a creditor or, in this case, a victim. Rather, a suit is commenced, a judgment is obtained and executed, and a lien is imposed or wages are garnished. That is, the victim takes advantage of his or her civil remedies; the court does not act as an enforcer and compel payment to the victim through the imposition of a criminal penalty upon the indigent debtor.
"In order to hold a person in contempt, a court must have jurisdiction over the person and the subject matter. State v. Thomas, 550 So.2d 1067 (Ala. 1989)." M.C. v. State, 600 So.2d 387, 388 (Ala.Crim.App.1991). Our law does not contemplate that this type of contempt action[6] will lie in order to circumvent the clear prohibition in Rule 26.11(i)(2) against *1127 jailing an indigent defendant for his or her inability to pay court-ordered moneys. Therefore, we hold that the trial court did not have jurisdiction to issue the contempt order in this case. We reverse its judgment that Dixon "be immediately incarcerated for such contempt and held in the Bibb County Jail pending payment of a lump sum of $10,000.00." (C. 251.)

III. The Sentencing Order
Additionally, we find it necessary to address Dixon's claim regarding the amendment of his sentence. This is a matter of subject matter jurisdiction, an issue we would have addressed ex mero motu, even if Dixon had not raised it on appeal. See Thompson v. Board of Pardons & Paroles, 806 So.2d 374, 375 (Ala. 2001) ("`[I]t is the duty of an appellate court to consider lack of subject matter jurisdiction ex mero motu.'" (quoting Ex parte Smith, 438 So.2d 766, 768 (Ala. 1983))). This issue must be addressed at this time because, if we do not address it, Dixon, on remand, although no longer subject to imprisonment for his inability to pay any outstanding court-ordered moneys, would still be in arrears and owing restitution and payments to the Crime Victims Compensation Fund because the order of the trial court amending his sentence would still be in effect.
The issue before us is whether the trial court's second order  the order purporting to increase the restitution and crime victims compensation owed by Dixon in exchange for placing Dixon on probation  is void because the trial court lacked jurisdiction to issue the order. This is a question of law; therefore, we review it de novo. Ex parte Heard, [Ms. 1020241, December 19, 2003] ___ So.2d ___ (Ala.2003).
Rule 24.4, Ala. R.Crim. P., provides:
"No motion for new trial or motion in arrest of judgment shall remain pending in the trial court for more than sixty (60) days after the pronouncement of sentence, except as provided in this section. A failure by the trial court to rule on such a motion within the sixty (60) days allowed by this section shall constitute a denial of the motion as of the sixtieth day; provided, however, that with the express consent of the prosecutor and the defendant or the defendant's attorney, which consent shall appear in the record, the motion may be carried past the sixtieth day to a date certain; if not ruled upon by the trial court as of the date to which the motion is continued, the motion is deemed denied as of that date, unless it has been continued again as provided in this section. The motion may be continued from time to time as provided in this section."
A motion to set aside or modify a sentence falls under the purview of Rule 24.4. See Ex parte Hitt, 778 So.2d 159, 161-62 (Ala.2000) ("Motions to amend or correct a sentence are not specifically mentioned in the Rules of Criminal Procedure, but this Court has held that such posttrial motions are governed by Rule 24. Pickron v. State, 475 So.2d 599 (Ala.1985). See, also, Rose v. State, 598 So.2d 1040 (Ala.Crim.App.1992). Further, if timely filed, such a motion may be presented to the court for a ruling after the 30-day period. See Rule 24.3, Ala. R.Crim. P.; Pickron, 475 So.2d at 599-600."). See also State v. Monette, 887 So.2d 314, 315 (Ala. Crim.App.2004) ("A motion to alter, *1128 amend, or vacate a sentence is the functional equivalent of a motion for a new trial and `should be treated the same procedurally as a motion for new trial or a motion in arrest of judgment....' Melvin v. State, 583 So.2d 1365, 1366 (Ala.Crim. App.1991). See also Pickron v. State, 475 So.2d 593 (Ala.Crim.App.1984), aff'd, 475 So.2d 599 (Ala.1985). A motion for a new trial must be filed within 30 days of the date of sentencing. See Rule 24.1(b), Ala. R.Crim. P. Also, a motion for a new trial is deemed denied by operation of law if no ruling is made within 60 days from the date of sentencing. See Rule 24.4, Ala. R.Crim. P."). But see Esters v. State, 894 So.2d 755 n. 4 (Ala.Crim.App.2003) ("Caselaw appears to be in conflict in regard to the effect of Rule 24 on appointed trial counsel's motion to reconsider Esters's sentences and Esters's pro se motion to vacate his sentences."). But cf. Holt v. State, 628 So.2d 1038 (Ala.Crim.App.1993), and Martinez v. State, 602 So.2d 504 (Ala. Crim.App.1992) (both holding that a motion to reconsider a sentence does not toll the time for appeal). We believe that the better reasoned approach is to hold that a trial court loses jurisdiction over a motion to alter or amend a sentence if it does not rule on the motion within 60 days of sentencing or allow its continuance with the express consent of the parties in the record.
It is clear from the record that the trial court did not rule on Dixon's motion within 60 days of sentencing. The question then becomes whether the express consent of the prosecutor and Dixon or Dixon's attorney appears in the record such that the trial court allowed the motion to be continued at their request or with their express consent.
The trial court sentenced Dixon on July 31, 1991. Dixon filed his motion to alter the sentence on August 28, 1991. The trial court conducted a preliminary hearing on the motion on September 25, 1991. The trial court continued the motion until November 1, 1991, noting that "[t]he Court does specifically retain jurisdiction of this case. Con't until Nov 1st." (C. 2.) Although the trial court proclaimed that it retained jurisdiction over the motion, nothing in the record reflects an express agreement between the parties to continue the motion. Therefore, the trial court lost jurisdiction to rule on the motion on September 30, 1991.
The State argues that, after the trial court issued its September 25, 1991, order, which purported to carry the motion past the sixtieth day to a date certain, the parties expressly consented to continue the motion pursuant to Rule 24.4. However, the entry into the record of express consent between the parties cannot be, to quote Dixon's brief, "after the fact." The State alleges that there is evidence of express consent in the record from documents dated October 7, 1991, June 3, 1992, and April 24, 1992.[7] Not only are these *1129 dates well after the trial court's order carrying the motion forward, but also these dates are well after the trial court lost jurisdiction over the motion. The rule is clear that the trial court can continue the motion past the sixtieth day only with the express consent of the parties; thus the parties' express consent empowers the trial court to carry the motion forward. These alleged declarations of express consent in the record were untimely in that they were not entered before, or with, the trial court's order purporting to carry the motion forward.[8]
Because the record does not contain any indication that the motion to alter the sentence was continued in accordance with Rule 24.4, the motion was deemed denied by operation of law on September 30, 2001. The question becomes whether the trial court had jurisdiction to increase the amount of restitution and crime victims compensation against Dixon by virtue of any other legal basis.
In State v. Redmon, 885 So.2d 850 (Ala. Crim.App.2004), this Court held that a trial court had jurisdiction to amend its restitution order to address the matter of restitution for a third victim to whom restitution had not yet been awarded, even though the amendment to the restitution order was made more than 30 days from the date of sentencing. This Court stated
"Clearly, Judge Reese's August 21, 2003, order was not final  it failed to address the matter of restitution for one of Redmon's three victims. Because this ruling was not final, it was capable of being amended to make it complete, final, and thus reviewable by a higher court. Moreover, as evidenced by the wording of § 15-18-67, Ala.Code 1975, the award of restitution is mandatory."
885 So.2d at 853 (footnotes omitted). This Court noted in a footnote:
"However, we do not address the question whether a trial judge has the authority to award additional restitution for each victim after he has assessed restitution for all victims. Once a restitution hearing is held and a trial court has issued a restitution order it is uncertain whether that order can be modified more than 30 days after the original order was entered. `[I]t is ... clear that the Legislature intended that restitution remain an integral part of traditional criminal sentencing.' Roberts v. State, 863 So.2d 1149, 1153 (Ala.Crim. App.2002). Well-established law holds that a trial court retains jurisdiction to modify a sentence for 30 days after the sentence is entered. See Jolly v. State, 689 So.2d 986 (Ala.Crim.App.1996), and Rule 24.4, Ala. R.Crim. P., and Rule 59, Ala. R. Civ. P.
"Whether a trial court can award more restitution after a victim has incurred additional medical expenses is not addressed by the `Restitution to Victims of Crimes' Act. At least one state has a statutory provision that specifically vests jurisdiction in a trial court `for purposes of imposing or modifying restitution until such time as the losses may be determined.' Cal.Penal Code § 1202.46 (West.1999)."
885 So.2d at 853 n. 4.
Section 15-18-67, Ala.Code 1975, provides:

*1130 "When a defendant is convicted of a criminal activity or conduct which has resulted in pecuniary damages or loss to a victim, the court shall hold a hearing to determine the amount or type of restitution due the victim or victims of such defendant's criminal acts. Such restitution hearings shall be held as a matter of course and in addition to any other sentence which it may impose, the court shall order that the defendant make restitution or otherwise compensate such victim for any pecuniary damages. The defendant, the victim or victims, or their representatives or the administrator of any victim's estate as well as the district attorney shall have the right to be present and be heard upon the issue of restitution at any such hearings."
In awarding restitution, the trial court conducts a restitution hearing at which the State presents direct evidence of any pecuniary damage suffered by the victim. The trial court then determines, to the best of its ability, how to best compensate the victim for his or her injuries. This Court has frowned upon an open-ended and speculative determination of compensation. See Alford v. State, 651 So.2d 1109, 1114 (Ala.Crim.App.1994) ("The restitution order is open-ended, i.e., the amount of restitution to be paid is left to future determination, is speculative, and is based upon vague and questionable testimony of the victim. No documentary evidence was introduced to support the amount awarded.").
We note that the 30-day rule regarding the trial court's authority to alter or amend a sentence rests, at least in part, on a desire for finality and surety of judgment. This same concern clearly underlies the concept of restitution, see Alford, supra, as well as the imposition of an assessment under the Crime Victims Compensation Act, see § 15-23-17(b), Ala.Code 1975.
As we noted above, but we expound upon here,
"it is ... clear that the Legislature intended that restitution remain an integral part of traditional criminal sentencing....
"Furthermore, although compensation to the victim may have been the primary purpose of the Restitution Act, it was certainly not the sole purpose. Section 15-18-68(3), Ala.Code 1975, states that `[t]he anticipated rehabilitative effect on the defendant regarding the manner of restitution or the method of payment' is another important criterion for determining the manner, method, or amount of restitution. Thus, one of the practical objectives of the Act is to force a wrongdoer to recognize the consequences of his or her actions and to accept the financial responsibility for those consequences. It is significant, we think, that restitution is fundamentally different from civil damages."
Roberts v. State, 863 So.2d 1149, 1153-54 (Ala.Crim.App.2002). Additionally, as for the crime victims assessment, we note that, "[i]n imposing this penalty, the court shall consider factors such as the severity of the crime, the prior criminal record, and the ability of the defendant to pay, as well as the economic impact of the victim compensation assessment on the dependents of the defendant." § 15-23-17(b), Ala.Code 1975. This assessment, too, has the effect of "forc[ing] a wrongdoer to recognize the consequences of his or her actions and to accept the financial responsibility for those consequences." Roberts, 863 So.2d at 1154.
Restitution and a statutory assessment, like a fine, are components of a sentence. Therefore, we hold that a final restitution order, like a sentencing order, *1131 can only be modified within 30 days of the order's becoming final;[9] the same is true of the amount of a statutory assessment.[10]
In this case, unlike Redmon, there was only one victim, and the court's original sentencing order awarded compensation to that victim. Therefore, the trial court's order was final when it was issued on July 31, 1991. Because the restitution order in this case was final, the trial court could modify it for only 30 days following its issuance. Accordingly, the trial court was without jurisdiction to modify the restitution amount over 10 months after issuing the original, final restitution order in this case.[11]

IV. Conclusions
For the reasons stated above, we reverse the trial court's order finding Dixon in contempt. Additionally, we reverse the sentencing order of the trial court that increased the amount of restitution and the amount of the payment to the Crime Victims Compensation Fund. The original sentencing order dictates the amount owed by Dixon  a total of $15,000. The record indicates that, as of November 9, 1997, Dixon had paid $20,033 into the trial court, well over the original $15,000 he owed. The record indicates, then, that Dixon has satisfied in full the monetary assessments against him; both parties agree that he has also served his entire prison sentence.
Accordingly, the judgment is reversed and this cause is remanded. The trial court is directed to vacate immediately both the contempt order and the sentencing order dated June 3, 1992. Dixon is no longer encumbered by any punishment in this cause.
REVERSED AND REMANDED.
McMILLAN, P.J., and BASCHAB and WISE, JJ., concur. COBB, J., concurs in the result, with opinion. SHAW, J., concurs in the result.
COBB, Judge (concurring in the result).
I disagree with the majority's holding in its published opinion that, "[b]ecause the record does not contain any indication that the motion to alter the sentence was continued in accordance with Rule 24.4, the motion was deemed denied by operation of law on September 30, 2001." Dixon v. State, 920 So.2d 1122, 1129 (Ala.Crim.App. 2005). I disagree for the reasons stated in my dissent in Taylor v. State, 905 So.2d 36 (Ala.Crim.App.2005) (Cobb, J., dissenting), wherein I wrote that I believe that this *1132 Court erred in holding that Underwood v. State, 879 So.2d 611 (Ala.Crim.App.2003), had been overruled by the Alabama Supreme Court in Ex parte Heard, [Ms. 1020241, December 19, 2003] ___ So.2d ___ (Ala.2003).
I recognize that Rule 24.4 requires "express consent on the record" to achieve a continuance of a posttrial motion beyond 30 days, but I believe that in situations where it is obvious that parties intended a continuance, it would not be inconsistent with Rule 24.4 to allow the record to be corrected to reflect the parties' intent at the time of the continuance. In this case, the State did not object to the continuance of the hearing and the trial court specifically noted: "The Court does specifically retain jurisdiction of this case. Con't until Nov 1st." (C. 2.) Thus, I believe, as I stated in Underwood, that the better course of action in this case and similar cases would be to "remand this cause for the circuit court to determine whether the [`Motion to Set Aside Court's Sentence'] was continued by express agreement of the parties. If the trial court finds that it was, it should be allowed to amend the case action summary to reflect that fact. If the trial court finds that the motion was not continued by express agreement of the parties," then the trial court would be without jurisdiction to amend its original order. Underwood v. State, 879 So.2d at 613-614.
However, I agree with the majority in its holding and reasoning that this case is due to be reversed because the trial court did not have subject matter jurisdiction over the contempt action against Dixon. Therefore, I agree that this cause is due to be reversed and remanded.
NOTES
[1] Dixon was ordered to make a one-time payment of $10,000 within five days of his release on probation; thereafter, he was to pay $100 per week for 12½ years.
[2] The order stated: "This cause coming on to be heard on [Dixon's] motion to the Court to reconsider the Court's sentence in this cause and to set aside the sentence. Said motion having been filed on the 28th day of August, 1991...." (C. 26.) Therefore, the order purported to grant Dixon's motion to alter the sentence, although the motion did not mention increasing the amount of restitution or fine owed.
[3] Dixon was threatened several other times with the revocation of his probation, but those incidents are not relevant to the inquiry at hand.
[4] The details surrounding Dixon's release from prison are not in the record before us. In his brief on appeal, Dixon claims that he completed his prison sentence, and the State does not dispute that fact. The record reflects only the date on which Dixon's probation was revoked, September 28, 1998, and the date that the State began garnishment proceedings on his salary, July 31, 2001 (C. 196).
[5] Dixon was indigent at the trial court level and is indigent on appeal.
[6] Rule 33.1(b), Ala. R.Crim. P., defines the different types of contempt:

"(1) `Direct Contempt' means disorderly or insolent behavior or other misconduct committed in open court, in the presence of the judge, that disturbs the court's business, where all of the essential elements of the misconduct occur in the presence of the court and are actually observed by the court, and where immediate action is essential to prevent diminution of the court's dignity and authority before the public.
"(2) `Constructive Contempt' means any criminal or civil contempt other than a direct contempt.
"(3) `Criminal Contempt' means either:
"(a) Misconduct of any person that obstructs the administration of justice and that is committed either in the court's presence or so near thereto as to interrupt, disturb, or hinder its proceedings, or
"(b) Willful disobedience or resistance of any person to a court's lawful writ, subpoena, process, order, rule, or command, where the dominant purpose of the contempt proceeding is to punish the contemnor.
"(4) `Civil Contempt' means willful, continuing failure or refusal of any person to comply with a court's lawful writ, subpoena, process, order, rule, or command, that by its nature is still capable of being complied with."
The Committee Comments to Rule 33.1, Ala. R.Crim. P., state, in pertinent part:
"Rule 33 applies both to civil contempt proceedings and to criminal contempt proceedings, so long as the proceedings arise out of criminal cases. The general distinction between civil and criminal contempt is the purpose for which the punishment is imposed. Where the punishment operates prospectively, i.e., to coerce compliance with a lawful order of the court, the contempt is civil. The person being punished holds the keys to the jail and can gain release at any time by complying with the order. See Shillitani v. United States, 384 U.S. 364 (1966). On the other hand, a criminal contempt proceeding is intended to punish for accomplished, not contemplated or ongoing, conduct, e.g., a willful failure to comply with lawful orders of the court. Its purpose is to vindicate the dignity of the court. Criminal contempt is a criminal offense for which a specific punishment is meted out, over which the defendant has no control. See United States v. Barnett, 376 U.S. 681 (1964)."
The contempt in this case was clearly constructive, but it is unclear whether Dixon was ordered imprisoned based on an adjudication of criminal contempt or of civil contempt.
[7] The State points to the trial court's order of October 7, 1991, in which that court noted that it was continuing the November 1, 1991, hearing on motion of the State. There is no mention of the defendant's consent to the continuance. In a later order, dated June 3, 1992, the trial court stated that the motion was "continued from time to time orally. Said continuances having been granted on both motion of the Defendant and the State of Alabama and the State of Alabama agreeing not to object to a hearing and disposition of the motion even though ninety [sic] days has expired since the date of the original sentence." (C. 26.) Also on June 3, 1992, the State filed an agreement not to object to the untimeliness of the trial court's ruling. (C. 25.) Finally, on April 24, 1992, Dixon's trial counsel filed a letter with the clerk of the court explaining that the motion was continued in 1992 by mutual agreement. (C. 23.) We do not reach whether any of these incidents constitute the express consent of the parties in the record, because they are all untimely, as discussed above.
[8] We note that this Court recently overruled Underwood v. State, 879 So.2d 611 (Ala.Crim. App.2003), in which this Court had recognized the possibility that parties could impliedly consent to the continuance of a posttrial motion beyond the 60 days allowed in Rule 24.4. In Taylor v. State, 905 So.2d 36 (Ala. Crim.App.2005) (Cobb, J., dissenting), this Court made it clear that only the express consent of the parties, entered into the record, would suffice.
[9] This, of course, is subject to proper continuation of the proceedings under Rule 24.4, Ala. R.Crim. P.
[10] We note that a statutory assessment is final upon imposition.
[11] We note that this holding is not in conflict with the Alabama Supreme Court's holding in Hill v. Bradford, 565 So.2d 208 (Ala.1990). In Hill, the Court held that the trial court had jurisdiction to issue a restitution order approximately 15 months after the defendant had been sentenced. The original sentence did not include restitution. The Alabama Supreme Court held:

"We do not agree that the trial court lost jurisdiction to enter this restitution judgment 30 days after Hill was sentenced to a term of imprisonment, because the restitution statute makes it clear that restitution hearings are to be held as a matter of course and that restitution may be ordered in addition to any other sentence imposed and does not require that a restitution hearing be held within 30 days of the imposition of a sentence of imprisonment or other criminal sanctions. Under the facts of this case, the hearing was timely and did not violate the United States Constitution. Barker v. Wingo, 407 U.S. 514, 521, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101 (1972)."
565 So.2d at 210. Although this Court has previously questioned the decision in Hill, see Jolly v. State, 689 So.2d 986, 987-88 & n. 3 (Ala.Crim.App.1996), our decision today is narrow and concerns only the authority of a trial court to alter a final order of restitution.