SMITH, Justice.
Jerome Theodorou pleaded guilty to third-degree receiving stolen property, see § 13A-8-19, Ala.Code 1975,[1] and was sentenced to 12 months in prison. Following a hearing at which both the State and Theodorou presented evidence, the trial court entered an order requiring Theodo-rou to pay $33,417.94 in restitution. Theo-dorou appealed the restitution order to the Court of Criminal Appeals. See § 15-18-78(a), Ala.Code 1975. The Court of Criminal Appeals affirmed the restitution order in an unpublished memorandum, Theodo-rou v. State, 53 So.3d 150 (Ala.Crim.App. 2009), and this Court granted Theodorou’s petition for a writ of certiorari. We affirm.

Facts and Procedural History

In September 2004, a backhoe was stolen from a construction site in Town Creek. A hydraulic device described as a “hammer attachment” was attached to the backhoe when it was stolen. The backhoe and the hammer attachment belonged to Bussman Construction Company, which was performing work at the construction site. After three days, Bussman Construction was able to obtain a replacement backhoe to continue working at the construction site.
In March 2005, the stolen backhoe and the hammer attachment were recovered from Theodorou’s property. According to Theodorou, he purchased the backhoe and the hammer attachment for $45,000 on January 20, 2005, from an individual named James Cannon. Theodorou testified that he purchased the equipment in Gulf Shores, Alabama, while he was performing hurricane-disaster work following Hurricane Ivan, and that he later transported the equipment to his house in Lawrence County, approximately 10 miles from the construction site where the equipment had been stolen.
Theodorou was indicted on August 12, 2005, for first-degree receiving stolen property. On June 20, 2006, he pleaded guilty to third-degree receiving stolen property and was sentenced to 12 months in jail. The trial court suspended the sentence and placed Theodorou on 12 months’ supervised probation.
On September 14, 2006, the trial court conducted a hearing to determine the amount of restitution Theodorou would be required to pay. Theodorou and David Bussman, the owner of Bussman Construction, testified at that hearing.
*154 According to Bussman, the backhoe and the hammer attachment cost $86,728.86. He purchased the backhoe in May 2004 for $66,112.50; although the record does not indicate when he purchased it, Bussman purchased the hammer attachment for $20,616.36. Bussman had insurance coverage for the backhoe but not for the hammer attachment. Bussman testified that the hammer attachment returned to him had not been stored properly and that it therefore did not have any value and had to be replaced. Bussman Construction received insurance proceeds of $64,500 for the loss of the backhoe,[2] leaving a loss of $22,228.86 ($20,616.36 for the hammer attachment and $1,612.50 for the difference in the cost of the backhoe and the insurance proceeds received for the backhoe).
In addition, Bussman testified that Bussman Construction was unable to operate at the construction site for three days after the theft of the backhoe and the hammer attachment. Bussman estimated that the loss resulting from those three days was $6,616.58. He testified that he calculated that amount by dividing the gross revenue of Bussman Construction for the year by the number of working days in the year, with the resulting number representing the average revenue per working day.[3] Bussman then multiplied that number by three to arrive at $6,616.58.
Bussman also testified that Bussman Construction lost $4,572.50 as a result of the replacement of the backhoe. Bussman calculated that sum by combining the estimated amount of depreciation with certain monthly payments he had made on the backhoe before it was stolen, all of which, according to Bussman, were not covered by the insurance proceeds.
After the restitution hearing, the trial court entered an order requiring Theodo-rou to pay restitution in the amount of $33,417.94. That sum included $20,616.36 for the hammer attachment, $1,612.50 for the difference in the cost of the backhoe and the insurance proceeds paid for the backhoe, $6,616.58 for lost revenue, and $4,572.50 for replacement loss.
Theodorou filed a motion for a new trial, which was denied by operation of law on November 24, 2007. Theodorou appealed the restitution order to the Court of Criminal Appeals. On October 2, 2009, the Court of Criminal Appeals, in an unpublished memorandum, affirmed the trial court’s restitution order. Presiding Judge Wise and Judge Welch dissented, each with opinion.
This Court granted Theodorou’s petition for the writ of certiorari on March 4, 2210.

Discussion

“The right of crime victims to receive restitution is set forth in the Restitution to Victims of Crimes Act, § 15-18-65 et seq., Ala.Code 1975 (‘the Act’).” Roberts v. State, 863 So.2d 1149, 1152 (Ala.Crim.App.2002). Section 15-18-65, Ala. Code 1975, provides as follows:
“The Legislature hereby finds, declares and determines that it is essential *155 to be fair and impartial in the administration of justice, that all perpetrators of criminal activity or conduct be required to fully compensate all victims of such conduct or activity for any pecuniary loss, damage or injury as a direct or indirect result thereof. The provisions of this article shall be construed so as to accomplish this purpose and to promote the same which shall be the public policy of this state.”
As the Court of Criminal Appeals stated in Roberts: “The legislative purpose underlying the Act, as evidenced by the plain language of § 15-18-65, was to fully compensate victims of crime for ‘any pecuniary loss, damage or injur/ suffered as a direct or indirect result of a criminal act.” 863 So.2d at 1153 (citing Butler v. State, 608 So.2d 773 (Ala.Crim.App.1992), and Gladden v. State, 644 So.2d 1267 (Ala.Crim.App.1993)).
In the present case, the trial court’s restitution order quotes the following from that portion of the Act codified at § 15-18-67, Ala.Code 1975:
“When a defendant is convicted of a criminal activity or conduct which has resulted in pecuniary damages or loss to a victim, the court shall hold a hearing to determine the amount or type of restitution due the victim or victims of such defendant’s criminal acts. Such restitution hearings shall be held as a matter of course and in addition to any other sentence which it may impose, the court shall order that the defendant make restitution or otherwise compensate such victim for any pecuniary damages. The defendant, the victim or victims, or their representatives or the administrator of any victim’s estate as well as the district attorney shall have the right to be present and be heard upon the issue of restitution at any such hearings.”
Section 15-18-66(2), Ala.Code 1975, defines “pecuniary damages” as
“[a]ll special damages which a person shall recover against the defendant in a civil action arising out of the facts or events constituting the defendant’s criminal activities; the term shall include, but not be limited to the money or other equivalent of property taken, broken, destroyed, or otherwise used or harmed and losses such as travel, medical, dental or burial expenses and wages including but not limited to wages lost as a result of court appearances.”
Section 15-18-66(4), Ala.Code 1975, defines “victim” as “[a]ny person whom the court determines has suffered a direct or indirect pecuniary damage as a result of the defendant’s criminal activities. ‘Victim’ shall not include any participant in the defendant’s criminal activities.”
Theodorou contends that the Court of Criminal Appeals erred in affirming the trial court’s restitution order. He argues first that the restitution order was based “upon a criminal act for which Theodorou was not convicted or, for that matter, even charged or implicated.” (Theodorou’s brief, p. 6.) He contends that the theft of the property — and not his receipt of the stolen property — proximately caused the damage for which the trial court ordered Theodorou to compensate Bussman Construction. Theodorou contends that the trial court therefore exceeded its discretion in issuing the restitution order.
In Reeves v. State, 24 So.3d 549, 553 (Ala.Crim.App.2009), the Court of Criminal Appeals stated:
“ ‘Before a defendant can be held liable for damages, it must be established that his criminal act was the proximate cause of the injury sustained by the victim.’ Strough v. State, 501 So.2d 488, 491 (Ala.Crim.App.1986). Therefore, under Alabama’s restitution statute, *156 Reeves could be ordered to pay restitution only if one of two conditions existed: (1) his victims suffered any direct or indirect pecuniary losses as a result of the activity for which he has been convicted or, (2) he admitted to other criminal conduct during the proceedings that was the proximate cause of any injuries to the victims. Lamar v. State, 803 So.2d 576 (Ala.Crim.App.2001). The State has the burden of proving that a defendant’s criminal act was the proximate cause of the victim’s injury before a defendant can be held liable for damages. Richardson v. State, 608 So.2d 1132 (Ala.Crim.App.1992).”
Ordinarily, the defendant’s ability to foresee that the victim would suffer damage as a result of the criminal activity determines whether proximate cause exists. In Strough v. State, 501 So.2d 488, 491 (Ala.Crim.App.1986), the Court of Criminal Appeals stated the following regarding foreseeability:
“As our Supreme Court observed in Alabama Power Company v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975), foreseeability is the cornerstone of proximate cause. This does not mean, however, that the defendant must have actually foreseen the particular injury which resulted from his action. Rather, the injury sustained by the victim must have been of such a nature that a reasonable person could have foreseen or anticipated that the injury might occur as a natural consequence of the action. Williams v. Woodman, 424 So.2d 611 (Ala.1982); Prescott v. Martin, 331 So.2d 240 (Ala.1976). Where an injury is caused by intentional conduct, the rules of proximate cause are more liberally applied. Phillips v. Smalley Maintenance Services, Inc., 435 So.2d 705 (Ala.1983).”
(Emphasis added.) Thus, in reviewing the restitution order in the present case, we must determine whether in receiving the stolen property Theodorou should have reasonably foreseen that his criminal conduct would cause Bussman and Bussman Construction to sustain the particular damage for which the trial court ordered restitution. Additionally, we note that the trial court has wide discretion in determining the amount of restitution. Howard v. State, 639 So.2d 555, 556 (Ala.Crim.App.1993) (“ ‘ “The particular amount of restitution is a matter which must of necessity be left almost totally to the discretion of the trial judge. That discretion should not be overturned except in cases of clear and flagrant abuse.” ’ ” (quoting Richardson v. State, 603 So.2d 1132, 1134 (Ala.Crim.App.1992), quoting in turn Clare v. State, 456 So.2d 355, 356 (Ala.Crim.App.1983), affirmed, 456 So.2d 357 (Ala.1984))).
As to the $20,616.36 the trial court ordered in restitution for the hammer attachment, Bussman testified that when the attachment was returned to him it was unusable because, he said, it had been stored on its side while it was in Theodorou’s possession. Theodorou testified that the attachment worked properly when he obtained the equipment in January 2005, and he testified that he stored the attachment in an upright position. However, Bussman testified that the attachment was lying on its side when it was located at Theodorou’s residence. According to Bussman, if the hammer attachment was not stored in an upright position, the weight of the 300- to 400-pound steel rod inside the attachment would warp the attachment and make it unsafe to operate. Bussman testified that having the hammer attachment inspected to determine the extent of the damage caused by storing it on its side would have involved “tearfing] it all the way back down to the bare steel and buildpng] *157 it back up,” which Bussman suggested was cost-prohibitive. In light of that testimony, there was sufficient evidence indicating that the hammer attachment was damaged after Theodorou received it, and there consequently was sufficient evidence indicating that Theodorou’s criminal conduct proximately caused the damage to the hammer attachment. Reeves, 24 So.3d at 554 (“ ‘[0]nce property is illegally removed from the custody of its owner it is reasonably foreseeable that the property may suffer damage.’ ” (quoting State v. Lacey, (Ms. 2006-CA-115, Nov. 7, 2007) (Ohio Ct.App.2007) (not published in N.E.2d))). Additionally, Theodorou has not demonstrated that the trial court’s award of $20,616.36 in restitution for the hammer attachment exceeded the wide discretion the trial court had to make that determination. See Howard, supra. Consequently, that part of the restitution order is due to be affirmed.
The remaining $12,801.58 the trial court ordered as restitution — $1,612.50 for the difference in the cost of the backhoe and the insurance proceeds received for the backhoe, $6,616.58 for lost revenue, and $4,572.50 for replacement loss — represents damage Bussman Construction suffered after the theft in September 2004 but before, according to Theodorou, he received the stolen property in January 2005. Theodorou argues that each of these amounts was proximately caused by the theft of the property rather than by his receipt of the stolen property.[4]
The State responds to this position, however, by making the following argument:
“A person who knowingly purchases stolen property is a part of the chain of activities that led to the theft of property because, absent a willing buyer of such stolen property, the theft of the property might not have occurred. A person who receives the stolen property can foresee that the person from whom the property was stolen will incur a financial loss, including the necessity to replace the equipment and loss of the use of the equipment. Consequently, it is proper to hold the buyer of the stolen property jointly or severally responsible with the thief for the loss to the victim, even though the loss may have occurred before he received the stolen property.”
(Emphasis added.) In reply, Theodorou states that he
“agrees that it is theoretically possible for the theft of property and the subsequent receipt of the stolen property to jointly or severally proximately cause injury to a victim of such criminal conduct. Likewise, Theodorou agrees that there may be concurrent or multiple proximate causes from which damages flow. However, Theodorou argues that this mere theoretical possibility alone is not enough to award damages. There still must exist some sort of causal connection between the criminal conduct and the actual damages.... In the instant case, there is no such connection between the actual damages and Theo-dorou’s receipt of the stolen property.”
In Commonwealth v. Kelly, 836 A.2d 931 (Pa.Super.Ct.2003), the Pennsylvania Superior Court considered a “market” theory of causation similar to that advanced by the State in this case. In Kelly, the defendant had entered a plea of nolo contendere to three counts of receiving stolen property; specifically, the defendant had received a compact-disc player and two cellular telephones that had been stolen from a truck. 836 A.2d at 932. The trial court ordered Kelly to pay $2,269.80 in restitu *158 tion as a condition of his probation. Of that amount, $1,938.41 was for repairs to the truck for damage that occurred when the items were stolen. On appeal, the defendant “claim[ed] that it was improper to order restitution for damage to a truck that was broken into when all he was convicted of was receiving stolen property of items taken from inside the truck and there was no evidence that he was the one who broke into the truck.” 836 A.2d at 932. The Pennsylvania Superior Court rejected the defendant’s argument, however. The court reasoned:
“While the repair of the truck is not directly connected to the crime of receiving stolen property, it is indirectly connected to the crime of [receiving stolen property]. Even if [the defendant] did not actually break into the truck, he provided a market for the person or persons who did.... ”
836 A.2d at 932. In concluding its opinion, the court reiterated that rationale, noting:
“[T]he verdict means [the defendant] was convicted of buying the goods, and he either knew they were stolen or reasonably should have known they were stolen. We note that [the trial court] reasoned that ‘if those people aren’t out there buying stolen property, people aren’t breaking in....’ (Id.) In other words, [the defendant] provided a market for that person who is criminally responsible for the break-in and damage to the truck. While this would not be enough to be considered a ‘direct’ result of the criminal activity, we do agree with [the trial court] that this can be considered ‘indirectly’ connected to the criminal activity.”
836 A.2d at 934.
In Kelly, it was crucial that the restitution for damage to the truck was imposed as a condition of the defendant’s probation rather than as a part of the defendant’s sentence. If the restitution had been imposed as a part of the defendant’s sentence, the applicable statute would have required a “direct causal connection” between the receipt of the stolen property and the damage to the truck.[5] 836 A.2d at 933. However, because the restitution was imposed as a condition of the defendant’s probation, a different statute controlled; under that statute “the required nexus between the damage and the offense is relaxed, and restitution only require[d] some connection to criminal responsibility....”[6] 836 A.2d at 932.
Like the Pennsylvania statute in Kelly applicable to restitution ordered as a condition of probation, Alabama’s restitution scheme incorporates a “relaxed” standard of “indirect” causation for determining whether a defendant’s criminal activity *159 has caused a victim particular pecuniary damage. Specifically, § 15-18-66(4), Ala. Code 1975, defines “victim” as “[a]ny person whom the court determines has suffered a direct or indirect pecuniary damage as a result of the defendant’s criminal activities” (emphasis added).
Thus, although Theodorou’s receipt of the stolen equipment may not have directly caused the damage here, we agree with the State’s argument that Theodorou’s criminal conduct was an indirect cause of that damage; by purchasing the property that he knew was stolen, Theodorou intentionally placed himself in the chain of activities that included the theft of the specific property and caused the additional $12,801.58 in damages he was ordered to pay as restitution. See also Strough, 501 So.2d at 491 (“Where an injury is caused by intentional conduct, the rules of proximate cause are more liberally applied.”). All the damages Theodorou was ordered to pay as restitution were related to the specific property he received.[7] Moreover, the authorities above make it clear that the purpose of the Act is “to fully compensate victims of crime for ‘any pecuniary loss, damage or injury5 suffered as a direct or indirect result of a criminal act.” Roberts, 863 So.2d at 1153. Accordingly, we agree with the Court of Criminal Appeals’ conclusion that Theodorou’s receipt of the stolen property caused the damage for which the trial court awarded Bussman Construction restitution.[8]
Finally, Theodorou argues that the amount of the restitution order is “punitive in nature.” The Court of Criminal Appeals concluded that Theodorou’s arguments in this regard do not comply with Rule 28(a)(10), Ala. R.App. P., because Theodorou failed to include sufficient “citations to the cases, statutes, [and] other authorities” to support his contention that the amount of ordered restitution was excessive. As in his brief to the Court of Criminal Appeals, the only citations to authority included in this section of Theodo-rou’s brief to this Court are citations to general propositions of law that do not support his specific arguments. As the Court of Criminal Appeals noted:
“Theodorou does not cite any authority for his proposition that the circuit court is bound by the fair market value of the *160 property stolen and may not consider other factors. Contra State v. Ellis, 838 P.2d 1310, 1312 (Ariz.Ct.App.1992) (holding that while fair market value is generally the proper measure of a victim’s loss, fair market value is not always the appropriate standard, and the trial court’s consideration of other factors is within its broad discretion). Theodorou also has not cited any authority for his proposition that the circuit court may not order him to pay restitution above the actual monetary value of the stolen equipment. Contra Ex parte Fletcher, 849 So.2d 900, 909 (Ala.2001) (holding that the circuit court may, as part of its restitution order, require the defendant to pay interest). Consequently, Theodo-rou has not complied with Rule 28(a)(10), [Ala. R.App. P.,] and his arguments are not properly before this court.”
Theodorou does not address the authorities relied upon by the Court of Criminal Appeals, nor has he demonstrated that the Court of Criminal Appeals otherwise erred in affirming the trial court’s restitution order. Consequently, the judgment of the Court of Criminal Appeals is due to be affirmed.

Conclusion

The judgment of the Court of Criminal Appeals is affirmed.
AFFIRMED.
WOODALL, STUART, BOLIN, and PARKER, JJ., concur.
COBB, C.J., and LYONS and MURDOCK, JJ., concur in part and dissent in part.
SHAW, J., recuses himself.*

. Section 13A-8-19, Ala.Code 1975, provides:
"(a) Receiving stolen property which does not exceed five hundred dollars ($500) in value constitutes receiving stolen property in the third degree.
"(b) Receiving stolen property in the third degree is a Class A misdemeanor.”

. The record does not indicate what happened to the backhoe that was recovered from Theodorou.

. Bussman testified that he had counted each weekday as a "working day.” He stated that the actual number of working days was less because of factors such as bad weather. He had not determined the precise number of days in the year actually worked, however, but he stated that a lower number of days actually worked would have resulted in the calculation of a higher average revenue per day. He also testified on cross-examination that he did not know if the weather would have prevented Bussman Construction from working at the construction site on the three days in question.

. The dissenting opinions by Judge Wise and Judge Welch to the Court of Criminal Appeals’ unpublished memorandum express a similar view. 53 So.3d at 151.

. See 18 Pa. Cons.Stat. § 1106(a) ("Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.” (emphasis added)).

. See 18 Pa. Cons.Stat. § 1106(b) ("Whenever restitution has been ordered pursuant to subsection (a) and the offender has been placed on probation or parole, his compliance with such order may be made a condition of such probation or parole.”); 42 Pa. Cons.Stat. § 9754(c) ("The court may as a condition of its order require the defendant:.... (8) To make restitution of the fruits of his crime or to make reparations, in an amount he can afford to pay, for the loss or damage caused thereby.”). See also Commonwealth v. Harriott, 919 A.2d 234, 239 (Pa.Super.Ct.2007) (discussing 42 Pa. Cons.Stat. § 9754(c)(8) and noting that it "reference[s] loss or damage ‘caused’ by the crime but [it] do[es] not dictate that the restitution be a direct result of the offense”).

. Cf. Chapman v. State, 733 So.2d 1055 (Fla.Dist.Ct.App.1999), a case in which the defendant, who was ordered to pay restitution for certain stolen items she had received, was also ordered to pay restitution for damage to items that were stolen at the same time but that the defendant had not actually received. The statute at issue in Chapman, Fla. Stat. § 775.089(l)(a), authorized "restitution for damage or loss caused ‘directly or indirectly’ by the defendant.” Bogert v. State, 834 So.2d 392, 394 (Fla.Dist.Ct.App.2003) (quoting Fla. Stat. § 775.089(l)(a)). Under that statute, Florida courts "have ... held that a defendant receiving stolen property and pawning it is sufficiently 'related' to the victim's loss to justify restitution.” Bogert, 834 So.2d at 394.
The Chapman court reversed the order of restitution as to the stolen items that the defendant did not "actually or constructively possess[].” 733 So.2d at 1056. Chapman illustrates that even the more relaxed, "indirect” standard of causation is not without limits. The present case does not involve the concerns at issue in Chapman, however, because Theodorou was ordered to pay restitution only for damage related to the specific stolen property that he received.

. Theodorou points out that the trial court’s order mistakenly asserts that he pleaded guilty to "theft of property” rather than to receiving stolen property. The Court of Criminal Appeals concluded that that mistake was the result of a clerical error. Our conclusion that Theodorou’s receipt of the stolen property caused the damage at issue pretermits any need to consider whether the trial court, in referencing a plea to "theft of property,” erroneously attributed to Theodorou damage that was caused solely by the theft of the property and not by his receipt of the stolen property.