WELCH, Judge.
M.L.R. appeals from the trial court’s order requiring him to pay restitution and court costs. M.L.R. argues that the trial court erred in ordering him to pay the court costs and restitution without first holding a hearing and determining whether he and his legal guardian have the ability to pay.
On May 20, 2011, a petition for delinquency was filed against M.L.R. in the Juvenile Court of Mobile County, Alabama, charging him with burglary, § 13A-7-7, Ala.Code 1975, and attempting to elude a law-enforcement officer, § 13A-10-52, Ala.Code 1975. M.L.R. admitted to the charge of attempting to elude an officer, but he denied the burglary charge. The trial court held an adjudication hearing on August 1, 2011. The State presented testimony that M.L.R. and two other juveniles entered a vacant house that was being remodeled and vandalized it; a neighbor contacted the police, and the three juveniles fled but were apprehended. M.L.R. admitted that he had been inside the house, that he had peeled some paint off a wall, that he had used a copper pipe to beat a hole in a wall, and that he had taken copper pipe from the residence. The juvenile court determined that the burglary charge was founded and adjudicated M.L.R. delinquent.
At the conclusion of the adjudication hearing the trial court stated: “Based on what I’ve heard of the evidence and his admissions, I do find him guilty of burglary. Just how much will probably have to be determined by further hearing as to the restitution but he is guilty of burglary.” (A.H. 84.)[1]
A disposition hearing was held on August 8, 2011. The court committed M.L.R. to the Department of Youth Services, but suspended the commitment and placed M.L.R. on probation. At the disposition hearing, defense counsel argued that M.L.R.’s guardian, his grandmother, was indigent, and that their household income was from public assistance and was barely enough to pay rent and utilities. Counsel asked the court to waive court costs. The juvenile court stated: “Right now, no, I’m not going to waive any fees. But I will look when we find out what restitution is owed and if I see he is earnestly making an attempt to pay that then we can always revisit that.” (D.H. 10-11.) Defense *309 counsel requested a restitution hearing. The court stated that it had found that “a lot of damage was done. Part of that was done while he was in there.... I know there was a lot of copper taken that probably was not taken by these young men, at least at the time when they were caught.” (D.H. 11.) The State argued: “Judge the estimate amount was way over the deductible amount. But the deductible amount was twenty-five hundred.” (D.H. 11.) The court stated that it would need to see the estimate, and the prosecutor said: “Judge, I can email it to you.” (D.H. 12.) The court then said: “All right, and I’ll let you and email that to [defense counsel], as well, before I have any hearing on this; okay. But he will be ordered to pay his full share of restitution.” (D.H. 13.)
No restitution hearing was held.
On September 30, 2011, the trial court entered a written order requiring M.L.R. to pay $2,500 in restitution to the victim jointly and severally with his two codefen-dants. (C. 40.) M.L.R. filed a motion to alter, amend, or vacate the judgments setting court costs and restitution. The motion was denied by operation of law.
I.
M.L.R. argues that the trial court erred when it ordered him and his guardian to pay court costs, because, he argues, the court failed to consider that they were indigent, and it failed to hold a hearing to determine whether they could afford to pay the court costs. M.L.R. acknowledges that the juvenile court has the authority to recover court costs from a juvenile’s parent or guardian. Rule 26, Ala. R. Juv. P., provides, in relevant part: “Court costs in juvenile cases shall be assessed and distributed as provided by law.” Section 12-15-109, Ala.Code 1975, provides, in relevant part, that “[i]f, after a hearing, the juvenile court finds that the parent or other person is financially able to pay all or part of the court costs, as provided by law, ... the juvenile court shall order them to pay the same and may prescribe the manner of payment.”
The record establishes that at the disposition hearing M.L.R. asked the court to discontinue the requirement that he wear an electronic monitoring device, and he told the court that the only income his grandmother, his guardian, received was from public assistance and that it was barely enough to pay rent and utilities. (D.H. 10.) The court placed M.L.R. under house arrest and relieved M.L.R. of the requirement that he wear an electronic monitor. M.L.R. then requested that the court waive court costs and “treat him as you would treat a child that is in the Department of Human Resource’s custody.” (D.H. 10.) M.L.R.’s counsel also stated: “If you’re wondering how [the grandmother] can afford my fee[,] I’m pro bono.” (D.H. 10.) The trial court responded:
“That’s very kind of you. He’s not going to luck out and have attorneys like you working for him in the future. That’s why he’s got to change. Right now, no, I’m not going to waive any fees. But I will look when we find out what restitution is owed and if I see he is earnestly making an attempt to pay that then we can always revisit that.”
(D.H. 10-ll.)(Emphasis added.)
After discussing the issue of restitution, the court repeated that it would assess court costs but that if M.L.R. made honest efforts to pay them, the court would take the matter into its consideration. (D.H. 13.)
M.L.R.’s counsel then argued that she had been told that the court waived payment of fees in proceedings for some children in State custody and that M.L.R. was *310 “being funded as if he were a foster care child[,] [s]o it is the same State money.” (D.H. 13.) The juvenile court replied:
“I understand and if I see diligent payments, then I will consider that. I don’t want to have people, you know, living in poverty and making their situation worse. But at the same time, I need to make sure that I can get as much court cost and, certainly, all the restitution that is due.”
(D.H. 14.)
Thus, it is clear from the record that, at the disposition hearing, M.L.R. argued repeatedly to the juvenile court that his guardian’s only income derived from public assistance. The court acknowledged the family’s poverty, and it indicated that if M.L.R. made earnest efforts to pay the court costs, the court would reconsider the issue of the waiver of some of the court costs. The record does not reflect that the court failed to hold a hearing or to consider the matter of the guardian’s ability to pay, which it was required to do. Rather, the record reflects that, after the court heard M.L.R.’s arguments and considered the matter of the family’s poverty, the juvenile court did not grant M.L.R. all that he had requested at that time. The court repeatedly stated that it first wanted M.L.R. to demonstrate that he was going to attempt to pay the costs and that it would then reconsider the matter.
Furthermore, M.L.R. cites no authority holding that a juvenile court errs when it imposes court costs on a juvenile and a guardian whose income is derived from public assistance, and we are aware of no such authority. On the basis of the record before us, we find no error.
II.
M.L.R. also argues that the juvenile court erred when it assessed restitution against him, jointly and severally with his accomplices, in the amount of $2,500 without first holding a hearing and allowing him to be heard on the issue of restitution.
As noted in the initial portion of this opinion, the juvenile court stated at the disposition hearing that it would need to see the estimate of the cost of the damages to the victim’s house, and the prosecutor stated that she would send it to the judge by electronic mail. The court then said: “All right, and I’ll let you, and email that to [defense counsel], as well, before I have any hearing on this; okay. But he will be ordered to pay his full share of restitution.” (D.H. 13.)
Near the end of the disposition hearing the following also occurred:
“[M.L.R.’s counsel]: Okay, so we are setting a restitution hearing?
“THE COURT: Well, you can get her rendition of what’s owed before you decide you wanted — And I’m gonna say— And we all know this, generally [damage done] in the commission of a burglary is generally taxed to the people that are convicted of doing it. Now, if we’ve got a good reason or a good answer why none of the damage should be compensated by your defendant and you can convince me of that then I will certainly — Or that an excessive amount has been added to your client, then I will certainly take that into consideration and we will have a hearing. But, first, I think you would want to know what that is. But, I’m always here, and I will entertain it.”
(D.H. 14.)
The State acknowledges that “it is true that the trial court’s comments could be read, by any reasonable person, to indicate that it contemplated setting a restitution hearing....” (State’s brief, at p. 11.) The State argues, though, that a hearing was not necessary because the *311 trial court actually considered the matter of restitution at the disposition hearing and a separate hearing was unnecessary. We disagree.
“Restitution in juvenile cases is governed by Rule 26.11(a), Ala. R.Crim. P. The amount must be based not only on the amount that compensates the victim, but also on the juvenile’s ability to reasonably meet that obligation, because the goal of restitution is primarily rehabilitation. It is an abuse of discretion for the juvenile court to fail to take into account the juvenile’s financial resources and obligations, the burden that payment will impose, the juvenile’s age, background, and all other relevant factors, as well as the rehabilitative effect of the restitution order. D.J.W. v. State, [705 So.2d 521 (Ala.Crim.App.1996)]; § 12-15-1.1, Ala.Code 1975; Rule 26.11(a), Ala. R.Crim. P.”
T.B. v. State, 819 So.2d 108, 111 (Ala.Crim.App.2001).
The record discloses, as the State has acknowledged, that a reasonable person could interpret the juvenile court’s comments to mean that it intended to hold a hearing on the amount of restitution owed by M.L.R. after the State provided to the court and to M.L.R. the amount of damages claimed by the victim. That the court intended to set the matter for a hearing was particularly likely in this case because the court itself acknowledged that “a lot of copper [was] taken that probably was not taken by these young men, at least at the time when they were caught” (D.H. 11), indicating that, at the time of the disposition hearing the amount of damage caused by M.L.R.’s actions was uncertain. We note, too, that the victim testified during the adjudication hearing that the house was vandalized a couple of weeks before the incident involving M.L.R., and someone took the air-conditioning unit, the compressor, and the copper pipes that had been attached to the air-conditioning unit. (A.H. 14.) The State has the burden of proving that a defendant’s criminal act was the proximate cause of a victim’s injury before a defendant can be held liable for damages. Ex parte Theodorou, 53 So.3d 151, 156 (Ala.2010). No documentary evidence was submitted to support the amount of damages for which M.L.R. was held responsible, and M.L.R. had no opportunity to introduce his own evidence at a restitution hearing or to contest whatever documents or other forms of estimates of damages the State might have provided to the court. As M.L.R. correctly argues, “Notice and the opportunity to be heard are the ‘hallmarks of due process.’ Anonymous v. Anonymous, 353 So.2d 515, 519 (Ala.1977).” (M.L.R.’s brief, at p. 14.) The juvenile court’s failure to hold a restitution hearing in this case resulted in reversible error.
We are mindful of a trial court’s discretion in determining the amount of restitution owed. E.g., Ex parte Stutts, 897 So.2d 431, 433 (Ala.2004), quoting Clare v. State, 456 So.2d 355, 356 (Ala.Crim.App.1983), aff'd, 456 So.2d 357 (Ala.1984). First, however, the juvenile court must follow the dictates of Rule 26.11, Ala. R.Crim. P., setting forth the criteria for determining restitution.
Therefore, we set aside the restitution order in this case and remand the case to the juvenile court for a restitution hearing for the purpose of determining, in accordance with Rule 26.11(a), a restitution award. Application of Rule 26.11(a) will require the court’s consideration of the financial resources available to M.L.R. and his guardian and of their ability to reasonably meet the obligation. The court shall thereafter enter a written order stating its findings and the underlying facts and circumstances, to facilitate this Court’s re *312 view of the restitution order. Due return of the written order and a transcript of the hearing shall be made to this Court within 56 days of the release of this opinion.
For the foregoing reasons, the judgment of the juvenile court is affirmed in part and reversed in part, and the case is remanded for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH DIRECTIONS.*
WINDOM, P.J., and KELLUM, BURKE, and JOINER, JJ., concur.

. The transcripts of the adjudication hearing and the disposition hearing are separately paginated. References to the August 1, 2011, adjudication hearing will be designated "(A.H.),” and will include the relevant page or pages of the transcript. References to the disposition hearing held on August 8, 2011, will be designated "(D.H.),” and will include the relevant page or pages of the transcript.

 Note from the reporter of decisions: On January 31, 2013, on return to remand, the Court of Criminal Appeals dismissed the appeal as moot, without opinion.