JOINER, Judge,
concurring in the result.
Thomas Addies Thomas appeals his convictions for second-degree domestic violence, see § 13A-6-131, Ala.Code 1975, and domestic violence by strangulation or suffocation, see § 13A-6-138, Ala.Code 1975, and his sentences of 10 years’ imprisonment for each offense.[1] This Court affirms Thomas’s convictions by unpublished memorandum; I concur in the result.
The facts of this case are disturbing and are correctly set out in this Court’s unpublished memorandum:
“[Thomas] and the victim, 53-year-old Charleen Thomas [(‘Charleen’)], were married in 2009. Due to Thomas’s alcoholism and ‘major drug problem,’ the couple had been separated for more than a year before the May 5, 2013, incident underlying the current charges. (R. 150.) On May 4, 2013, Thomas departed the ‘men’s home’ in Columbusf,] Georgia where he was living and he arrived at Charleen’s home at some point in the evening. There, he was provided a guest room in which to stay.[1]
“At some point shortly after 9:00 p.m. on May 5, 2013, Thomas entered Charlene’s bedroom and requested to have sex with her. Charlene declined Thomas’s request. As Thomas was leaving Charlene’s bedroom he stated, ‘This is gonna hurt you more than it does me.’ (R. 160.) Charleen said that he appeared to be sober when he left her bedroom. In five minutes Thomas returned to Charleen’s bedroom angry, screaming, and cursing at her. He jumped on top of Charleen, who was still lying on her bed, and pinned her down with his knees. ' He told her, ‘You’ve done it now, bitch. You’re gonna die.’ (R. 162.) Thomas spit in Charleen’s face and pulled her hair. At this point Char-leen stated that she did sméll alcohol on Thomas’s breath. He began hitting the back of Charleen’s head with his fist. He told Charleen that she ‘was going to die tonight, and so was he.’ (R. 164.) He picked up a hammer that was under Charleen’s nightstand and tried to force her to hit him with the hammer. She explained that he wanted her fingerprints on the hammer and he wanted ‘it’ to look like self-defense. However, when Charleen resisted his attempt to force her to hit him with the hammer, he put the hammer down and abandoned that idea. Thomas began to hit and kick *1212 Charleen and to ‘head butt [her] with his head against [her] head.’ (R. 164.) She said she was in ‘horrible pain.’ (R. 164.) She pleaded with him to stop. She stated that ‘he must have hit [her] a hundred times or so’ over the course of an hour while saying bad things to her and telling her that he intended to kill her. At some point, a head butt caused her to lose consciousness. When she woke up, she was on the bedroom floor. When Thomas saw that Charleen was awake, he grabbed her, pulled her pajama bottoms off, pulled his belt off, leaned Char-leen over the bed, and spanked her bottom with the belt as if she were a child. Charleen guessed Thomas struck her 20 or 30 times with the belt. Thomas took Charleen’s cellular phone from her bedside nightstand and used it to beat Charleen in the head. She fought her way into the den where Thomas pushed her to the floor. Thomas repeatedly punched Charleen in her ribs and stomach. He placed his belt around her neck and pulled it tight. Charleen testified that she was ‘gagging. [She was] trying to struggle. Nothing [was] working. [She was] urinating on [her]self.’ (R. 170.) Charleen struggled against the belt until she pulled it from her neck and threw it across the room. Thomas retrieved the belt, slipped the belt through its buckle to make a loop, placed the loop around Charleen’s neck, and pulled it tight. He was telling her, You deserve this, you know. You’ve turned my family against me, Miss Goody Two-Shoes.’ (R. 172.) Thomas pulled on the belt ‘real hard’ at least three times. (R. 172.) Charleen could not breath, and then Thomas stuck his fist in her mouth and his fingers down her throat and she began to gag. At some point Thomas pulled so forcefully on the belt that he lifted Charleen’s entire body off the floor. She lost consciousness. When she awoke, Thomas ordered her to go to her bedroom and get into bed. She was unable to walk, so she had to crawl to her bedroom. Thomas was screaming at her from the kitchen. Charleen believed Thomas was in the kitchen trying to open a bottle of wine.[2] Charleen, who was naked[3] at this point, gathered herself and went into the bathroom connected to her bedroom, opened the bathroom window, and jumped out of the window to the ground approximately 10 to 14 feet below. She was able to walk to a neighbor’s house who summoned the police and an ambulance. Charleen was taken by ambulance to a hospital emergency room. She was treated in the emergency room but not admitted to the hospital.
“Doctor Joseph Monley treated Char-leen in the emergency room. He testified that a belt like the one allegedly used to choke Charleen, could, if wrapped around someone’s neck and pulled tight enough, decrease the person’s oxygen enough to cause death.
“Numerous photographs were admitted into evidence depicting Charleen’s injuries.
[[Image here]]
On appeal, Thomas raises only one issue—specifically, whether his convictions for second-degree domestic violence and domestic violence by strangulation or suffocation violate the principles of double jeopardy because, he says, both offenses “were based on the same statutory elements as the other and the same facts and *1213 allegations in each count of the indictment.” (Thomas’s brief, p. 8.)
Initially, I note that Thomas’s brief fails to satisfy the requirements of Rule 28(a)(10), Ala. R.App. P., which mandates that an appellant’s argument contain “the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on.”
“[I am] aware that application of Rule 28(a)(10) to find a waiver of arguments in an appellate brief has been limited to those cases in which the appellant presents general assertions and propositions of law with few or no citations to relevant legal authority, resulting in an argument consisting of undelineated general propositions unsupported by sufficient legal authority or argument. Although Rule 28(a)(10) is to be cautiously applied, it has been applied recently by the Alabama Supreme Court and by this Court when appropriate. E.g., Ex parte Theodorou, 53 So.3d 151 (Ala.2010); Jefferson County Comm’n v. Edwards, 32 So.3d 572 (Ala.2009); Slack v. Stream, 988 So.2d 516 (Ala.2008); James v. State, 61 So.3d 357 (Ala.Crim.App.20[10]) (opinion on remand from Alabama Supreme Court); Scott v. State, [Ms. CR-06-2233, March 26, 2010] — So.3d — (Ala.Crim.App.2010); Baker v. State, 87 So.3d 587 (Ala.Crim.App.2009); Lee v. State, 44 So.3d 1145 (Ala.Crim.App.2009); Bush v. State, 92 So.3d 121 (Ala.Crim.App.2009); and Franklin v. State, 23 So.3d 694 (Ala.Crim.App.2008).
“In Scott v. State, this Court stated:
“ ‘ “Recitation of allegations without citation to any legal authority and without adequate recitation of the facts relied upon has been deemed a waiver of the arguments listed.” Hamm v. State, 913 So.2d 460, 486 (Ala.Crim.App.2002). “An appellate court will consider only those issues properly delineated as such and will not search out errors which have not been properly preserved or assigned. This standard has been specifically applied to briefs containing general propositions devoid of delineation and support from authority or argument.” Ex parte Riley, 464 So.2d 92, 94 (Ala.1985) (citations omitted). “When an appellant fails to cite any authority for an argument on a particular issue, this Court may affirm the judgment as to that issue, for it is neither this Court’s duty nor its function to perform an appellant’s legal research.” City of Birmingham v. Business Realty Inv. Co., 722 So.2d 747, 752 (Ala.1998).’
“Scott v. State, — So.3d at—. See also Hamm v. State, 913 So.2d 460, 486 n. 11 (Ala.Crim.App.2002) (‘Applying the federal counterpart to Alabama’s Rule 28, Ala. R.App. P., the United States Court of Appeals for the Eighth Circuit stated, “[W]e regularly decline to consider cursory or summary arguments that are unsupported by citations to legal authorities. See United States v. Wadlington, 233 F.3d 1067, 1081 (8th Cir. 2000); United States v. Gonzales, 90 F.3d 1363, 1369 (8th Cir.1996); see also United States v. Dunkel, 927 F.2d 955, 956 (7th Cir.1991) (‘Judges are not like pigs, hunting for truffles buried in briefs.’).” U.S. v. Stuckey, 255 F.3d 528, 531 (8th Cir.2001).’).”
Taylor v. State, 157 So.3d 131, 142-43 (Ala.Crim.App.2010).
In his brief on appeal, Thomas quotes only one case—Crayton v. State, 949 So.2d 976 (Ala.Crim.App.2006)—which consists of a quotation of both §§ 13A-l-8(b)(l) and 13A-l-9(a), Ala.Code 1975, and sets out the general proposition of law that, *1214 “ hvhen determining if one offense is included in another, the trend of recent Alabama decisions is to focus on the statutory-elements of the offenses and the factual allegations actually included in the indictment, rather than on the evidence or factual basis the State presents at trial or during the guilty-plea colloquy.’” (Thomas’s brief, p. 9 (quoting Crayton, 949 So.2d at 977).) Thereafter, Thomas quotes §§ 13A-6-181(a) and 13A-6-138(b), Ala. Code 1975—which are the offenses with which he was charged—and quotes portions of his indictment. The totality of Thomas’s analysis as to his claim is as follows:
“Here, based on the statutory elements of the offenses charged in Counts II and III and the facts alleged in the indictments and oral jury instruction as to the elements of those offenses, Thomas’s convictions for both violate principles of double jeopardy and cannot stand. One of those convictions and sentences must be reversed and vacated.”
(Thomas’s brief, p. 11.)
Thus, Thomas’s brief on appeal consists of an argument that includes a citation of only one case that stands for a general proposition of law, quotations of the statutes under which he was charged, partial quotations from his indictment, and a bare allegation that his convictions violate double-jeopardy principles, without any analysis as to how his convictions violate those principles. Consequently, Thomas’s argument on appeal is insufficient to satisfy Rule 28(a)(10), Ala. R.App. P,, and should not be considered by this Court.
Regardless, his claim is without merit. Again, as stated above, Thomas contends that his convictions for second-degree domestic violence and domestic violence by strangulation or suffocation violate the principles of double jeopardy because, he says, both offenses “were based on the same statutory elements as the other and the same facts and allegations in each count of the indictment.” (Thomas’s brief, p. 8.)
Thomas, in his brief on appeal, correctly sets out the following controlling principle:
“Section 13A-l-8(b)(l), Ala.Code . 1975, provides:
“ ‘(b) When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:
“ ‘(1) One offense is included in the other, as defined in Section 13A-1-9.’
“(Emphasis added.) Section 13A-l-9(a), Ala,Code 1975, provides:
“ ‘(a) A defendant may be convicted of an offense included in an offense charged. An offense is an included one if:
“‘(1) It is established by proof of the same or fewer than all the facts required to establish the commission of the offense charged; or “‘(2) It consists of an attempt or solicitation to commit the offense charged or to commit a lesser included offense; or
“ ‘(3) It is specifically designated by statute as a lesser degree of the offense charged; or
“ ‘(4) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interests, or a lesser kind of culpability suffices to establish its commission.’
“ ‘[I]n determining whether one offense is included in another, the trend of recent Alabama decisions is to focus on the statutory elements of the offenses and the factual allegations actually in- *1215 eluded in the indictment, rather than on the evidence or factual basis the State presents at trial or during the guilty-plea colloquy.’ Johnson v. State, 922 So.2d 137, 141 (Ala.Crim.App.2005). See also Moss v. State, 929 So.2d 486, 489 (Ala.Crim.App.2005) (‘[T]he clear trend in Alabama law is that in determining whether one offense is included in another, the focus is on the statutory elements of the offenses and the facts as alleged in the indictment, not on the evidence presented at trial.’).”
Crayton v. State, 949 So.2d 976, 977 (Ala.Crim.App.2006) (some emphasis added). Thus, when determining whether one offense is included in another, we look to the statutory elements of the offenses charged and to the allegations included in the indictments—not to the evidence presented at trial.
Here, instead of applying the principle articulated in Crayton and examining only the statutory elements of second-degree domestic violence and domestic violence by strangulation or suffocation and the allegations raised in Thomas’s indictment, this Court’s unpublished memorandum examines the statutory elements of both offenses, the allegations set forth in Thomas’s indictment, and the evidence the State presented at trial. Specifically, the unpublished memorandum examines the evidence the State presented at trial to determine what act served as the basis of Thomas’s second-degree-domestic-violence conviction. The unpublished memorandum finds:
“The physical injury caused by use of a belt did not have to be strangulation or suffocation as both Thomas and the State seem to assert. The indictment did not limit, nor did the trial court’s jury instructions limit seeond-degree domestic violence to an incident of strangulation. Thomas struck Charleen on the buttocks 20 or 30 times with a belt. The State’s exhibits 34 and 35 are photographs admitted into evidence depicting the bruises and abrasions to Charleen’s buttocks caused by the blows Thomas delivered with his belt. This is sufficient evidence to establish the impairment of physical condition, i.e., physical injury, necessary to convict for second degree domestic violence.”
Thereafter, the unpublished memorandum rejects Thomas’s claim, concluding:
“The jury could have found domestic violence by strangulation or suffocation (Count 3) based on two factual scenarios that are unrelated to the spanking incident discussed above. First, there was evidence before the jury establishing that Thomas strangled Charleen with a belt with the intent to cause physical harm. There was also evidence before the jury that Thomas intended to cause Charleen physical harm by obstructing her airway by sticking his fist into her mouth and causing her to suffocate. See § 13A-6-138(a), Ala.Code 1975.
“Therefore, based on all the evidence before the jury, it is possible that the jury could have found Thomas guilty of second-degree domestic violence based on evidence regarding a strangulation with a belt or based on a spanking with a belt. The jury could have found Thomas guilty of domestic violence by strangulation based on evidence of a strangulation with a belt or based on an attempt to suffocate by placing his fist in her mouth. A double jeopardy concern would exist only if the jury found second-degree domestic violence and domestic violence by strangulation based on the strangulation with a belt. However, the jury’s findings are unknown. Viewing all the evidence, it is clear that the jury had before it evidence supporting its verdicts, this Court will not go behind that verdict.”
*1216 Because this analysis does more than examine only the statutory elements and the allegations set forth in the indictment, the unpublished memorandum conflicts with Crayton.
Additionally, the analysis set forth in the unpublished memorandum is largely unnecessary, and, by engaging in this unnecessary analysis, the unpublished memorandum has pi’ovided the dissent with the opportunity also to ignore Crayton and to examine the evidence presented at trial to determine whether Thomas’s conviction for domestic violence by strangulation or suffocation is included within the offense of second-degree-domestic-violence.
Specifically, the dissent examines the State’s evidence presented at trial, dismisses the conclusion in the unpublished memorandum, and concludes that the “spanking” could not have formed the basis of the second-degree domestic violence conviction because the “belt” was not a “deadly weapon or dangerous instrument.” Thus, the dissent concludes that, because “spanking” could not have formed the basis for the second-degree-domestic-violence conviction, the only act that could have formed the basis of the second-degree-domestic-violence conviction was Thomas’s strangling Charleen with the belt and was, therefore, the same act that formed the basis of the domestic-violence-by-strangulation conviction.
The approach used by both the unpublished memorandum and the dissent is not only contrary to our well settled caselaw, but also unnecessarily cumbersome. Indeed, applying the above-quoted principle to this case—the principle Thomas asks us to apply—makes this case quite simple.
Here, Thomas was indicted by the Lee County Grand Jury, in relevant part, as follows:

“Count II

“[Thomas], did with intent to cause physical injury to another person, cause physical injury to another person to-wit: Charleen Mickle Thomas, by means of a deadly weapon or a dangerous instrument, to-wit: a belt, in violation of 13A-6-21 of the Code of Alabama and the victim, Charleen Mickle Thomas is a current or former spouse ... to-wit: a spouse, in violation of Section 13A-6-131 of the Code of Alabama....

“Count III

“[Thomas], did with intent to cause physical harm by strangulation or suffocation or attempted strangulation or suffocation to another person, to-wit: Charleen Mickle Thomas, and the victim, Charleen Mickle Thomas, is a spouse ... in violation of 13A-6-138 of the Code of Alabama....”
(C. 10 (emphasis added).)
Second-degree domestic violence is defined, in relevant part, as follows:
“(a) A person commits the crime of domestic violence in the second degree if the person commits the crime of assault in the second degree pursuant to Section 13A-6-21 ... and the victim is a current or former spouse, parent, child, any person with whom the defendant has a child in common, a present or former household member, or a person who has or had a dating or engagement relationship with the defendant....”
§ 13A-6-131(a) Ala.Code 1975. Second-degree assault is defined as follows:
“(a) A person commits the crime of assault in the second degree if the person does any of the following:

"....

“(2) With intent to cause physical injury to another person, he or she causes physical injury to any person *1217 by means of a deadly weapon or a dangerous instrument....”
§ 13A-6-21, Ala.Code 1975. “Physical injury” is defined as “impairment of physical condition or substantial pain.” § 13A-1-2(8), Ala.Code 1975. A “dangerous instrument” is defined as:
“Any instrument, article or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is highly capable of causing death or serious physical injury. ...”
§ 13A-1-2(12), Ala.Code 1975.
Domestic violence by strangulation or suffocation is defined as follows:
“(b) A person commits the crime of domestic violence by strangulation or suffocation if the person commits an assault with intent to cause physical harm ... by strangulation or suffocation, or attempted strangulation or suffocation against a person with whom the defendant has a qualified relationship.”
§ 13A-6-138(b), Ala.Code 1975.
An examination of the statutory elements of these two offenses clearly demonstrates that each offense requires proof of at least one element which the other does not. See Crayton, 949 So.2d at 977. See also Williams v. State, 104 So.3d 254, 256 (Ala.Crim.App.2012) (“In Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the United States Supreme Court held that Vhere the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.’”). Specifically, second-degree domestic violence requires proof that Thomas used a deadly weapon or dangerous instrument, which is not a statutory element for domestic violence by strangulation or suffocation; domestic violence by strangulation or suffocation requires proof of strangulation or attempted strangulation, which is not a statutory element for second-degree domestic violence. Additionally, the allegations set out in counts II and III of Thomas’s indictment do not demonstrate that the strangulation—or attempted strangulation—charged in count III of the indictment was the same act that gave rise to the second-degree domestic violence charged in count II of the indictment.
Because Thomas’s brief does not satisfy Rule 28(a)(10), Ala. R.App. P., and an examination of the statutory elements and allegations in the indictment demonstrate that his claim is without merit, I concur in the result.
WINDOM, P.J., and BURKE, J„ concur.

. Thomas was also convicted of attempted murder, see §§ 13A-4-2 and 13A-6-2, Ala. Code 1975, and was sentenced to 25 years’ imprisonment. As explained below, however, Thomas challenges only his domestic-violence convictions on appeal. Thus, I do not discuss his attempted-murder conviction.

"2 A police officer saw an open bottle of wine in the kitchen.

"3 Testimony from Charleen’s neighbor was that Charleen arrived at the neighbor’s house wearing only a pajama top, but no bottoms.”